BRENDA WERNLE, Indiv. and as Special Adm'r of the Estate of Michael Wernle, Deceased, Plaintiff-Appellant, v. COUNTRY LIFE INSURANCE COMPANY, Defendant-Appellee.

Fifth District    No. 5—84—0742

Opinion filed March 17, 1986.—Rehearing denied April 23, 1986.

KARNS, J., dissenting.

James E. Buchmiller, Ltd., of Greenville, for appellant.

Stephen W. Thomson and William E. Miller III, both of Reed, Armstrong, Gorman & Coffey, of Edwardsville, for appellee.

PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiff, Brenda Wernle, has perfected this appeal from an order of the circuit court of Madison County which dismissed her complaint against defendant, Country Life Insurance Company, Inc.

The record indicates that on December 22, 1980, plaintiff's deceased husband, Michael Wernle, applied to defendant for a medical insurance policy. At this time, he paid defendant $372.70 for insurance coverage for six months and received from defendant a receipt which provided in pertinent part as follows:

"CONDITIONAL RECEIPT

12-20-80

READ THIS RECEIPT CAREFULLY. UNLESS EACH AND EVERY CONDITION SPECIFIED IS FULFILLED, NO INSURANCE WILL BECOME EFFECTIVE PRIOR TO POLICY DELIVERY. NEITHER THE AGENT WHOSE SIGNATURE APPEARS ON THE REVERSE SIDE NOR ANY OTHER AGENT OF THE COMPANY IS AUTHORIZED TO ALTER, WAIVE OR OTHERWISE CHANGE THE CONDITIONS OF THIS RECEIPT.

Received from MICHAEL D. WERNLE, applicant, the sum of $372.70 dollars, which is given as a payment on the first premium of a Health Insurance Policy or Policies applied for

in Country Life Insurance Company. It is agreed that this payment is made and accepted subject to the following conditions:

1. If this application shall be approved by the Company without any further information being required of the applicant or any family member, or without the requirement of any medical examination of the applicant or any family member, the policy or policies issued by the Company shall take effect as of the date of this application, or the date requested by the applicant, whichever is later.

2A. If the Company requires further information, or a medical examination or any statement of the attending physician of the applicant or any family member, then any policy or policies (subject to section 2C, below) issued by the Company without modification by endorsement or extra premium shall be deemed to take effect as of the date of this application, or the date requested by the applicant, whichever is later.

2B. If the Company requires further information, or a medical examination or any statement of the attending physician of the applicant or any family member, and thereafter the Company is not willing to issue a policy or policies unless modified by endorsement or extra premium, the Company may tender to the applicant a policy or policies so modified which, when accepted by the applicant and the additional premium (if any) paid to the Company, shall be deemed to take effect as of the date the Company determined the policy modification or extra premium, or the date requested by the applicant, whichever is later.

\* \* \*

3. If this application, as to any one or more policies, is not approved and accepted by the home office of the Company within sixty (60) days from the date of this receipt, then the policy or policies concerned will not be issued and the insurance as to any such policy not issued shall be null and void from the beginning, and the Company will promptly return that portion of the payment evidenced by this receipt for any such policy not issued.

4. If the Company without requiring further information or medical examination is willing to issue a policy or policies on a modified basis or extra premium, it may tender to the applicant a policy or policies modified by endorsement or extra premium which policy or policies if accepted by the applicant will take effect as of the date of application, or the date requested

by the applicant, whichever is later. If such modification results in a reduced premium, any excess premium paid shall be returned to the applicant.

5. There is no coverage for injury, sickness or pregnancy unless a policy is issued, and then coverage will take effect for any injury sustained, sickness first manifested or pregnancy commenced on or after the effective date of coverage as determined in this receipt."

After receiving the application, defendant sent an "attending physician's statement" to Mr. Wernle's physician. On or about January 16, 1981, this statement was completed and returned to defendant. In this statement, the physician noted that Mr. Wernle was seen on December 27, 1980, "with a history of noting for two weeks a mass in the anterior portion of the neck increasing in size for one week, into the lateral aspect of the neck." This "mass" was later found to be malignant. In a letter dated February 16, 1981, the defendant denied Mr. Wernle's medical insurance application due to a "pre-existing condition" and returned the premium payment.

In a letter to defendant dated April 24, 1981, Mr. Wernle's physician stated that he was presented with reasonably good evidence that the "onset of symptoms from the mass was approximately December 22, or December 23, 1980." In a letter dated May 13, 1981, the defendant told Mr. Wernle's physician that it "would be inclined to believe that your initial description of the time of onset is, infact [sic], the best estimate we have of when he [decedent] noted the mass and therefore we are not changing our decision to deny health coverage." The defendant stated that it would reconsider its decision if the "records from Barnes [Hospital] *** clearly show date of onset of symptoms after December 20, 1980." No hospital records were submitted for defendant's consideration. The plaintiff's husband subsequently died of cancer.

Following defendant's refusal to pay medical claims, plaintiff filed the instant action, alleging that the defendant should have extended coverage to her deceased husband. The defendant filed a motion to dismiss, asserting that since the application for insurance constitutes an offer and nothing more, no contract of interim coverage arose under the conditional receipt. The circuit court adopted defendant's argument and dismissed plaintiff's complaint. The plaintiff appeals, contending that the conditional receipt provides temporary coverage so long as its conditions are met.

■ Broadly speaking, there are three kinds of conditional receipts:

" '(1) "[I]nsurable risk" or "satisfaction" binders in which the document states that the proposed insurance takes effect at the time of payment or of the physical examination, if it later appears that under objective standards of insurability the applicant was insurable at the date in question; (2) "approval" binders in which no insurance comes into effect until the insurance is approved by an authorized official of the company; if it does, however, the effective date is that of the application or the medical examination; and (3) unconditional temporary insurance during the pendency of the application or for a stated period (rarely used in life insurance).' [Citation.]" (*Hildebrand v. Franklin Life Insurance Co.* (1983), 118 Ill. App. 3d 861, 870-71, 455 N.E.2d 553, 560.)

A receipt is of the "insurability" variety if it purports to provide insurance from the effective date defined in the receipt if the company later determines that the applicant was a standard risk at that time. *Hildebrand v. Franklin Life Insurance Co.* (1983), 118 Ill. App. 3d 861, 870-71, 455 N.E.2d 553, 560.

Plaintiff urges that the language contained in the instant conditional receipt created an insurable risk binder, thus the medical insurance policy was in effect so long as the decedent was insurable under defendant's objective standards of insurability at the time of the application. Conversely, defendant contends that the instant conditional receipt was merely an approval binder under which the policy would not become effective until defendant's approval.

In *Reynolds v. Guarantee Reserve Life Insurance Co.* (1976), 44 Ill. App. 3d 764, 358 N.E.2d 940, we noted the following about conditional receipts in life insurance policies:

"[The] type of language follows this general pattern: If payment is made with the application, coverage starts on the date of the application or from the time of a medical examination or some other similar date, provided the company approves the application or is satisfied that the applicant met the company's medical requirements upon such date; if payment is not made with the application, no insurance is in effect until a later date, usually issuance or delivery of the policy. The courts' reasoning in these cases proceeds along these lines. The general impression given to the layman from these provisions is that he is covered from the earlier date if he pays at the time of application and not covered until the later date if he does not pay at that time. The applicant is entitled to rely on this reasonable impression and need not seek any other

protection. If he is injured or killed after he has met the objective requirements of the insurer, the insurer is estopped from arbitrarily rejecting the application so as to deny coverage on the 'technical' requirement of a condition precedent of acceptance, approval or satisfaction." (44 Ill. App. 3d 764, 769, 358 N.E.2d 940, 943-44.)

The bold-faced type at the top of the instant conditional receipt specifically provides that the medical insurance coverage may become effective prior to policy delivery provided that certain enumerated conditions are met. The second paragraph shows that the decedent paid the first installment on his policy on the date of application. Conditions 1 and 2A provide that the policy issued by defendant will take effect on the date of application or the date requested by the application, whichever is later, provided that the application is approved by defendant. Condition 2B provides that any modification the defendant may require in the terms of the policy will result in the policy becoming effective on a later date. Condition 3 gives the defendant 60 days to approve or reject the policy. If the defendant does not act within the 60 days, "then the policy or policies concerned will not be issued and the insurance as to any such policy not issued shall be null and void from the beginning, and the company will return [all monies paid]." Condition 5 provides that no coverage exists unless the company approves it and further provides that no coverage will be provided for sickness which manifests itself prior to the effective date of coverage.

After examining the instant conditional receipt, we conclude that it equivocates between allowing interim insurance before approval and allowing interim insurance only upon approval. Under the rationale of *Reynolds*, the instant decedent reasonably could have believed that he was covered so long as he met the defendant's objective standards of insurability at the time he applied for coverage. Thus, there is a question as to whether the instant receipt should be construed as an "insurability" or "approval" type receipt.

■■ ■ Insurance policy terms must be read according to their plain and ordinary meanings; any ambiguities arising when several of the provisions of the policy are read together will be construed in favor of the insured. (*Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 153, 466 N.E.2d 1091, 1093.) An ambiguous policy is one which is subject to more than one reasonable interpretation. (*Dolan v. Welch* (1984), 123 Ill. App. 3d 277, 280, 462 N.E.2d 794, 796.) Since we have determined that the instant conditional receipt is capable of being under-

stood as either an "insurability" or an "approval" receipt, the receipt is ambiguous. Ambiguities are to be resolved in favor of the applicant insured; therefore, we determine the instant receipt to be an "insurability" receipt. Since an insurer is estopped from arbitrarily rejecting coverage when it issues an "insurability" receipt (*Hildebrand v. Franklin Life Insurance Co.* (1983), 118 Ill. App. 3d 861, 874-75, 455 N.E.2d 553, 563; *Reynolds v. Guarantee Reserve Life Insurance Co.* (1976), 44 Ill. App. 3d 764, 769, 358 N.E.2d 940, 943-44), the circuit court's dismissal of plaintiff's complaint on the ground that approval by defendant was a precondition for interim coverage must be reversed.

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed, and we remand this cause for further proceedings.

Reversed and remanded.

WELCH, J., concurs.

JUSTICE KARNS, dissenting:

Under the clear and unambiguous wording of paragraph 5 of the conditional receipt, set out in the majority opinion, no insurance was in effect until a policy was issued, the conditional receipt determining the effective date of the policy. Numerous Illinois cases hold that an application for insurance is an offer and no insurance is effective until acceptance, usually in the form of issuance of the policy. (See, *e.g., Fields v. Franklin Life Insurance Co.* (1983), 115 Ill. App. 3d 954, 451 N.E.2d 930; *Reynolds v. Guarantee Reserve Life Insurance Co.* (1976), 44 Ill. App. 3d 764, 358 N.E.2d 940; *Wallace v. Prudential Insurance Co.* (1973), 12 Ill. App. 3d 623, 299 N.E.2d 344.) The majority has resorted to a strained construction of the language of the receipt and rewritten the agreement of the parties.